IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | C O M P L A I N T |
| PROBAT, INC., d/b/a BAUERMEISTER, INC., and PROBAT BURNS, INC. | ) ) ) ) ) | JURY TRIAL DEMAND |
| Defendant. | ) | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, as amended by the Americans with Disabilities Amendments Act of 2008, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Jeff Bollman who was adversely affected by such practices. As alleged with greater particularity in paragraphs 9a through 12 below, the Commission alleges that Defendant discharged Mr. Bollman because of his disability.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This is an action authorized and instituted pursuant to § 107(a) of Title VII of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Tennessee, Western Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission, is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by §107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant, Probat, Inc., d/b/a Bauermeister, Inc., and Probat Burns, Inc. ("Defendant Employer"), a German company, was doing business in the State of Tennessee and the City of Memphis, and has continuously had at least fifteen employees.

5. At all relevant times, Defendant Employer has continuously been and is now an employer engaged in an industry affecting commerce under § 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference §§ 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant Employer has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## **STATEMENT OF CLAIMS**

7.  More than thirty days prior to the institution of this lawsuit, Jeff Bollman filed a charge with the Commission alleging violations of Title I of the ADA by Defendant Employer.  All conditions precedent to the institution of this lawsuit have been fulfilled.

8.  Since on or about April 2009, Defendant Employer has engaged in unlawful employment practices at its Memphis, Tennessee facility in violation of § 102(a) of Title I of the ADA, 42 U.S.C. § 12112(a).

9.  The unlawful employment practices include terminating Mr. Bollman because of his disability, bipolar disorder.

   a.  Around 1993, Defendant Employer hired Mr. Bollman to work in its shipping and receiving department at its Memphis, Tennessee facility.

   b.  Defendant Employer is a manufacturer of grinding equipment, and it grinds various products from a granular state to powder.

   c.  Company President Carl Schmidt promoted Mr. Bollman to the mechanic position in 1998.

   d.  As a mechanic, Mr. Bollman's duties included re-building old machinery and building new machinery.

   e.  Around 1998, Mr. Bollman was diagnosed with bipolar disorder, a condition for which he began taking medicine.

   f.  The bipolar disorder substantially limits Mr. Bollman's brain function.

   g.  Mr. Bollman's job responsibilities increased greatly around the year 2000.  He travelled both nationally and internationally to complete work assignments for Defendant Employer.

h.	Around 2002, Mr. Bollman's physician, a general practitioner, took him off the medication.

i.	In 2007, Jeff Soldan replaced Carl Schmidt as president of the company.

j.	Mr. Bollman suffered a manic episode in late March of 2009 and was hospitalized for approximately one week.  During that time, he received treatment for his bipolar disorder from a psychiatrist, Dr. Angela Burt.

k.	Dr. Angela Burt released Mr. Bollman to return to work without restrictions.

l.	Mr. Bollman presented his return to work release to Mr. Soldan.  Mr. Soldan would not accept Mr. Bollman's medical release.

m.	Instead, he told Mr. Bollman that he had to complete a fitness for duty exam.

n.	In April 2009, Mr. Bollman went to Parkwood Behavioral Health System and completed Intensive Outpatient Therapy.

o.	Karen Townsend, the Parkwood Clinical Director, wrote a letter to Mr. Soldan discussing Mr. Bollman's excellent progress since his hospitalization, and noted that he no longer exhibited mental health instability.  Ms. Townsend stated that based on her interaction with Mr. Bollman, the presentation of his psychiatric history, and his medical records, he could return to work.

p.	After receiving Ms. Townsend's medical release, Mr. Soldan did not permit Mr. Bollman to return to work.

q.	Mr. Bollman then met with a psychologist at Parkwood named Barry

Vinick.

    r.     After assessing Mr. Bollman and discussing his diagnosis with the psychiatrist Dr. Burt, Dr. Vinick wrote a letter on May 5, 2009 explaining that Mr. Bollman had bipolar disorder but was stable.

    s.     Dr. Vinick noted that Mr. Bollman's manic episodes were extremely rare, and he confirmed that Mr. Bollman was fit to return to work without restrictions.

    t.     Mr. Bollman submitted this letter to Mr. Soldan the following day. In response, Mr. Soldan told him that he needed to see a medical doctor and that he should be evaluated by a psychiatrist.

    u.     Mr. Bollman met with Dr. Savira Sidhu, a second psychiatrist.

    v.     On or about May 15, 2009, Dr. Sidhu submitted a letter to Mr. Soldan stating that Mr. Bollman was able to return to work without restrictions.

    w.     Mr. Soldan stated that Dr. Sidhu's note did not fulfill the fitness for duty exam.

    x.     Mr. Soldan asked for Mr. Bollman's written consent to speak directly with Dr. Sidhu to verify that she had reviewed Mr. Bollman's job description. Mr. Bollman signed the consent form.

    y.     Mr. Soldan attempted to call Dr. Sidhu on several occasions.

    z.     When Dr. Sidhu failed to return Mr. Soldan's phone call after several attempts, Mr. Soldan submitted a letter to Mr. Bollman on June 22, 2009, stating that he must, by June 30, 2009, advise Defendant Employer of where he stood in the process of initiating the fitness for duty exam and following through with it.

    aa.    Mr. Soldan sent Mr. Bollman a letter dated July 9, 2009 stating that

because Mr. Bollman failed to contact Defendant Employer regarding his fitness for duty exam, Defendant Employer considered him to have voluntarily resigned from his position.

  bb. Defendant Employer terminated Mr. Bollman's employment, which ended effective June 30, 2009.

  cc. Within months, Defendant Employer hired a replacement in Mr. Bollman's former position.

  10. The effect of the practices complained of in paragraphs 9 a through cc above has been to deprive Mr. Bollman of equal employment opportunities and otherwise adversely affect his status as an employee, because of his disability.

  11. Since on or about April 2009, Defendant Employer has engaged in unlawful employment practices at its Memphis, Tennessee facility in violation of § 102(a) of Title I of the ADA, 42 U.S.C. § 12112(a).

  12. The unlawful employment practices include discharging Mr. Bollman because Defendant Employer perceived or regarded him as having a mental illness.

  a. In 1993, Defendant Employer hired Mr. Bollman to work in its shipping and receiving department at its Memphis, Tennessee facility.

  b. Defendant Employer is a manufacturer of grinding equipment, and it grinds various products from a granular state to powder.

  c. Company President Carl Schmidt promoted Mr. Bollman to the mechanic position in 1998.

  d. As mechanic, Mr. Bollman's duties included re-building old machinery and building new machinery.

  e. Also around 1998, Mr. Bollman was diagnosed with bipolar disorder, for which he began taking medicine.

  f. Bollman's job responsibilities increased greatly around the year 2000. He travelled both nationally and internationally to complete work assignments for Defendant.

  g. Around 2000, Mr. Bollman's physician, a general practitioner, took him off the medication.

  h. In 2007, Jeff Soldan replaced Carl Schmidt as president of the company.

  i. Mr. Bollman suffered a manic episode in late March of 2009, and he remained hospitalized for approximately one week. During that time, he received treatment for his bipolar disorder from a psychiatrist, Dr. Angela Burt.

  j. Dr. Angela Burt released Mr. Bollman to return to work without restrictions.

  k. Mr. Bollman presented his return to work release to Mr. Soldan. Mr. Soldan would not accept Mr. Bollman's medical release.

  l. Instead, he told Mr. Bollman that he had to complete a fitness for duty exam.

  m. In April 2009, Mr. Bollman went to Parkwood Behavioral Health System and completed Intensive Outpatient Therapy.

  n. Karen Townsend, the Parkwood Clinical Director, wrote a letter to Mr. Soldan discussing Mr. Bollman's excellent progress since his hospitalization, and that he no longer exhibited mental health instability. Ms. Townsend reported that based

on her interaction with Mr. Bollman, the presentation of his psychiatric history, and his medical records, he could return to work.

  o. After receiving Ms. Townsend's medical release, Mr. Soldan did not permit Mr. Bollman to return to work.

  p. Mr. Bollman then met with a psychologist at Parkwood named Barry Vinick.

  q. After assessing Mr. Bollman and discussing his diagnosis with psychiatrist Dr. Burt, Dr. Vinick wrote a letter on May 5, 2009, explaining that Mr. Bollman had bipolar disorder, but he was stable.

  r. Dr. Vinick noted that his manic episodes were extremely rare, and he confirmed that Mr. Bollman was fit to return to work without restrictions.

  s. Mr. Bollman submitted this letter to Mr. Soldan the following day. In response, Mr. Soldan told Charging Party that he needed to see a medical doctor and that he should be evaluated by a psychiatrist.

  t. Mr. Bollman met with Dr. Savira Sidhu, a second psychiatrist.

  u. On or about May 15, 2009, Dr. Sidhu submitted a letter to Mr. Soldan stating that Mr. Bollman was able to return to work without restrictions.

  v. Mr. Soldan stated that Dr. Sidhu's note did not fulfill the fitness for duty exam.

  w. Mr. Soldan asked for Mr. Bollman's written consent to speak directly with Dr. Sidhu to verify that she had reviewed Mr. Bollman's job description. Mr. Bollman signed the consent form.

  x. Mr. Soldan attempted to call Dr. Sidhu on several occasions.

y.   When Dr. Sidhu failed to return Mr. Soldan's phone call after several attempts, Mr. Soldan submitted a letter to Mr. Bollman on June 22, 2009, stating that he must, by June 30, 2009, advise Defendant of where he stood in the process of initiating the fitness for duty exam and following through with it.

z.   Mr. Soldan sent Mr. Bollman a letter dated July 9, 2009 stating that because Mr. Bollman failed to contact Defendant regarding his fitness for duty exam, Defendant considered him to have voluntarily resigned from his position.

aa.   Defendant Employer terminated Mr. Bollman's employment, which ended effective June 30, 2009.

bb.   Within months, Defendant Employer hired a replacement in Mr. Bollman's former position.

13.   The unlawful employment practices complained of in paragraphs 9 through 12 above were intentional.

14.   The unlawful employment practices complained of in paragraphs 9 through 12 above were done with malice or with reckless indifference to the federally protected rights of Jeff Bollman.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.   Grant a permanent injunction enjoining Defendant Employer, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from terminating an employee because of his disability.

B.   Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals

with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

   C. Order Defendant Employer to make whole Mr. Bollman, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including, but not limited to, reinstatement of Mr. Bollman; front pay; out of pocket medical expenses; and lost 401(k) contributions for Mr. Bollman.

   D. Order Defendant Employer to make whole Mr. Bollman by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 9 through 12 above, including living and travel expenses, and cost of replacement medical insurance, in amounts to be determined at trial.

   E. Order Defendant Employer to make whole Mr. Bollman by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 9 through 12 above, including emotional pain and suffering, humiliation, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial.

   F. Order Defendant Employers to pay Mr. Bollman punitive damages for its malicious and reckless conduct, as described in paragraphs 9 through 12 above, in amounts to be determined at trial.

   G. Grant such further relief as the Court deems necessary and proper in the public interest.

   H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

**P. DAVID LOPEZ**
General Counsel

**JAMES LEE**
Deputy General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

s/ Faye A. Williams (with permission ACC)
**FAYE A. WILLIAMS**
Regional Attorney
Tennessee Bar No. 011730

Joseph M. Crout (with permission ACC)
**JOSEPH M. CROUT**
Supervisory Trial Attorney
Tennessee Bar No. 012857

s/ Anica C. Conner
**ANICA C. CONNER**
Senior Trial Attorney
Tennessee Bar No. 025325

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Memphis District Office
1407 Union Avenue, Suite 901
Memphis, TN  38104
(901) 544-0087